U.S. Department of Justice

**United States Attorney**
**Western District of Wisconsin**

Telephone 608/264-5158
TTY 608/264-5006
Main Facsimile 608/264-5172
Criminal Division Facsimile 608/264-5054
Civil Division Facsimile 608/264-5724
Administrative Facsimile 608/264-5183

*Address:*
Suite 303, City Station
660 West Washington Avenue
Madison, Wisconsin 53703

*Mailing Address:*
United States Attorney's Office
P.O. Box 1585
Madison, Wisconsin 53701-1585

August 6, 2009

Marcus Jens Berghahn
Hurley, Burish & Stanton, S.C.
33 East Main Street, #400
P.O. Box 1528
Madison, Wisconsin

Re: *United States v. Gollon Brothers Wholesale Live Bait, Inc.*
    Case No. 09-cr-134-bbc

Dear Mr. Berghahn:

This is the proposed plea agreement between the defendant and the United States in this case.

1.      The defendant, Gollon Brothers Wholesale Live Bait, Inc., agrees to waive indictment and plead guilty to Count One of the information filed by the United States Attorney's Office. This count charges a violation of 16 U.S.C. § 3372(a)(2)(A) which carries maximum penalties of a maximum fine, pursuant to 18 U.S.C. § 3571, which shall be the greatest of $500,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, a three-year period of supervised release, and a $400 special assessment. The parties are not aware of any restitution which will be owed in this case. The defendant agrees to pay the special assessment at or before sentencing. The defendant understands that the Court will enter an order pursuant to 18 U.S.C. § 3013 requiring the immediate payment of the special assessment. In an appropriate case, the defendant could be held in contempt of court and receive an additional sentence for failing to pay the special assessment as ordered by the Court.

2.      The defendant acknowledges, by pleading guilty, that it is giving up the following rights: (a) to plead not guilty and to persist in that plea; (b) to a jury trial; (c) to be represented by counsel--and if necessary have the Court appoint counsel--at trial and at every other stage of the trial proceedings; (d) to confront and cross-examine

August 6, 2009
Page 2

adverse witnesses; (e) to testify and present evidence; and (f) to compel the attendance of witnesses.

    3.    The United States agrees that this guilty plea will completely resolve all possible federal criminal violations that have occurred in the Western District of Wisconsin provided that both of the following conditions are met: (a) the criminal conduct relates to the conduct described in the information; and (b) the criminal conduct was known to the United States as of the date of this plea agreement. This agreement not to prosecute is limited to those types of cases for which the United States Attorney's Office for the Western District of Wisconsin has exclusive decision-making authority. The defendant also understands that the United States will make its full file available to the Probation Office for its use in preparing the presentence report. The United States agrees that this guilty plea will resolve all federal criminal violations committed by defendant, and its shareholders, officers, and employees, provided that the defendant remains in existence and complies with the terms of condition of any sentence imposed by the Court.

    4.    The defendant agrees to complete the enclosed financial statement and return it to this office within one week of the guilty plea hearing. The defendant also agrees that the probation office may disclose to the United States the net worth and cash flow statements to be completed by the defendant in connection with the preparation of the presentence report, together with all supporting documents.

    5.    The parties agree that the applicable fine is to be determined by the court pursuant to 18 U.S.C. § § 3571 and 3572. The parties further agree to jointly recommend that any fine imposed be paid to the Lacey Act Reward Account pursuant to 16 U.S.C. § 3375(d). The parties acknowledge that the defendant disputes, and does not agree, that the market value set forth in the information is equivalent to "gross gain" for sentencing purposes.

    6.    The parties also agree to jointly recommend that, in addition to any other sentence imposed by the Court, that the Court impose the following conditions of probation, in addition to any other conditions imposed by the Court:

    A.  The defendant's facilities will be subject to not more than two (2) random facility inspections per calendar year, during the probation period. The inspection will be conducted by United States Fish and Wildlife Service (USFWS) Fish Health personnel and may be monitored by Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP) and/or Wisconsin Department of Natural Resources (WDNR) personnel in a procedure specified by the USFW, and as generally described in the attached survey of select pathogens from baitfish, incorporated herein by this reference. Copies of the completed inspection reports will be provided to

August 6, 2009
Page 3

DATCP and the WDNR. All inspections and tests will be paid for by the defendant.

   B. The defendant will be subject to the random testing of imported baitfish, at the discretion of the USFWS, not to exceed 3 lot inspections per month during the first two (2) years of the probationary term, with the defendant paying for all tests, and as generally described in the attached survey of select pathogens from baitfish, incorporated herein by this reference. The defendant will be required to submit to the USFWS and the WDNR a list of anticipated imports, including the species of baitfish and company that the baitfish are to be purchased from, by the 25th day of the month preceding the month of the proposed importation. In addition, the defendant must submit monthly reports to the USFWS and the WDNR on their imports/exports and any other interstate transportation of baitfish to include species, quantity, price, and recipient by the 10th of each month following the month of the interstate transportation.

   C. The defendant agrees that DACTCP or WDNR personnel may stop defendant's vehicles at any time, inspect cargo, and examine documentation which defendant is required to possess for the possession, importation, transportation, purchase or sale of baitfish.

   7. In the event of an appeal by either party, the United States reserves the right to make arguments in support of or in opposition to the sentence imposed by the Court.

   8. The defendant understands that sentencing discussions are not part of the plea agreement. The defendant should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States.

   9. If your understanding of our agreement conforms with mine as set out above, would you and the defendant please sign this letter and return it to me. By its signature below, the defendant acknowledges its understanding that the United States has made no promises or guarantees regarding the sentence which will be imposed. The defendant also acknowledges its understanding that the Court is not required to accept any recommendations which may be made by the United States and that the Court can impose any sentence up to and including the maximum penalties set out above.

   10. All plea agreements must be approved by the United States Attorney or his designee. This plea proposal has not yet been approved. Consequently, I have not

August 6, 2009
Page 4

signed this proposed plea agreement and the final acceptance is conditioned upon supervisory approval. If you have any questions or need any additional information, please feel free to contact me.

Very truly yours,

STEPHEN P. SINNOTT
Acting United States Attorney

_____
PETER M. JAROSZ
Assistant United States Attorney

10/29/09
Date

_____
August 28, 2009
Date

_____
MARCUS JENS BERGHAHN
Attorney for the Defendant

_____
BENJAMIN GOLLON
President, Gollon Brothers
Wholesale Live Bait, Inc.

8-27-09
Date

_____
JOSEPH GOLLON
Vice President, Gollon Brothers
Wholesale Live Bait, Inc.

8-27-09
Date

**Survey of select pathogens from baitfish**

**Statement of Work**

The U.S. Fish & Wildlife Service's La Crosse Fish Health Center (LFHC) will provide sampling and testing of 60 baitfish per lot. For virology, kidney and spleen samples will be combined into 5-baitfish pooled samples for a total of 12 samples; 30 individual baitfish will be tested for bacteriology and 20 baitfish will be externally and internally examined for parasites. Testing will focus on detecting the presence or absence of a targeted list of pathogens of concern (listed below).

LFHC will screen and confirm pathogens using procedures listed in the Laboratory Procedures Manual for the National Wild Fish Health Survey (3.1 ed., March 2006, available online at http://www.fws.gov/wildfishsurvey) and/or the AFS-FHS (American Fisheries Society-Fish Health Section), FHS blue book: suggested procedures for the detection and identification of certain finfish and shellfish pathogens (2007 edition or most recent. AFS-FHS, Bethesda, Maryland). LFHC will also perform confirmatory or other specialized tests needed to substantiate or refute laboratory results, such as Polymerase Chain Reaction (PCR) assays. Fish health laboratory results reports will be provided upon completion of testing for each facility.

**Pathogens of concern in baitfish**

**Viruses**
IPN (Infectious Pancreatic Necrosis Virus)
IHN (Infectious Hematopoetic Necrosis Virus)
VHS (Viral Hemorrhagic Septicemia Virus)
OMV (Oncorhynchus masou Virus)
LMBV (Largemouth Bass Virus)
SVCV (Spring Viremia of Carp Virus)
Fathead Minnow Virus
Grass Carp Reovirus (syn. Golden Shiner Virus)
Unknown viruses (or replicating agents)

**Bacteria**
*Aeromonas salmonicida*
*Yersinia ruckeri*
*Renibacterium salmoninarum*
*Edwardsiella ictaluri*

**Parasites**
*Glugea* sp.
*Heterosporis* sp.
*Pleistophora ovariae*
*Myxobolus* sp.
*Dactylogyrus* sp.
*Gyrodactylus hoffmani*
*Bolbophorus confusus*
*Diplostomum spathaceum*
*Bothriocephalus acheilognathi*- Asian Tapeworm
*Ligula intestinalis*
*Ergasilus* sp.
*Lernaea* sp.

**Facility inspections:**

The company would be subject to up to 2 facility inspections per year. The facility inspections include the examination and testing of baitfish held at the time of the inspection by the company either in ponds or other artificial storage locations not including vehicles that are about to deliver baitfish to customers. For the purposes of this health assessment work a lot will be defined as baitfish of the same species that share a common water source. If the company uses vehicles to store baitfish as a part of their business, then the baitfish in those vehicles at the facility at the time of the inspection may be subject to testing as part of the facility inspection. The businesses will not be required to be closed during the inspections.

The cost of the inspections would be $1,500 per lot of baitfish. For each inspection there is also a $300 travel expense added to the total cost of the baitfish lots examined. A lot of baitfish is defined as 60 baitfish of each species, and if the baitfish are from different locations then they would be considered different lots. For example, if one pond at the facility had fathead minnows from Minnesota and another pond had fathead minnows from Arkansas then they would be considered to be two separate lots of baitfish and each would be tested. In another scenario two ponds could contain fathead minnows that were obtained from the same source. In this case 30 baitfish would be sampled from each pond and the total 60 baitfish sample would be considered one lot. The total cost of the inspection will depend upon how many species of baitfish are present at the time of inspection and how many different sources the baitfish came from, but in no event will the total cost of the facility inspection exceed $5,000 during a calendar year.

The inspections will be during normal business hours Monday through Friday between the hours of 8 AM and 5 PM. The inspections will be random and unannounced. If the facility is closed or otherwise unstaffed at the time of the inspection, the inspectors will return at another random unannounced time. The baitfish will be examined for the pathogens of concern listed in the survey document. If any other viruses, bacteria, or parasites are found they will also be reported to DATCP and the WDNR.

**Monthly inspections:**

The monthly inspections will consist of no more than three lot inspections per month. A lot is defined as a 60 baitfish sample of an individual species being imported from a specific company during the month. For example, if the company is importing fathead minnows and sucker minnows from a Minnesota company, we may require that a 60 baitfish sample of fathead minnows be submitted for examination from the shipment. This would be one lot of baitfish at a cost of $1,500 per lot of baitfish plus the cost of shipment to the USFWS Baitfish Health Center in Onalaska, WI. Both parties agree to work in good faith to insure the best sampling and shipment method is used under specific directions and procedure of USFW.

Up to three lots are subject to examination in any given month for a maximum of 36 lots tested per year. There is no requirement for every lot of baitfish tested for DATCP

VHA requirements to be submitted for probationary compliance testing. The suggestion of having the veterinarian who is doing the DATCP VHA testing to also take a 60 baitfish sample for compliance testing was offered as advise to simplify the collection if a particular lot of baitfish is requested for compliance testing.

Companies will be required to notify the USFWS and the WDNR of all imports by the 25th day of the preceding month of the imports. In addition, the defendant must submit monthly reports to the USFWS and the WDNR on their imports/exports and any other interstate transportation of baitfish to include species, quantity, price, and recipient by the 10th of each month following the month of the interstate transportation.

In the event a lot selected for testing by USFWS or WDNR under this plea agreement is also the same lot in which a sample must be taken by a veterinarian or other authorized person to comply with the Veterinary Health Authorization (VHA) required by DATCP for the issuance of an import permit, the veterinarian or other authorized person will take an additional 60 baitfish sample of each species and forward this sample, on ice, via overnight mail to the USFWS Fish Health Center in Onalaska, WI, for laboratory testing. Once a completed VHA for the shipment is received by DATCP, DATCP may issue an import permit according to established policy. DATCP is in not required to wait for the results of the USFWS testing to issue an import permit.

Copies of the completed test results will be provided to company, DATCP and the WDNR.

## Survey of select pathogens from baitfish

### Statement of Work

The U.S. Fish & Wildlife Service's La Crosse Fish Health Center (LFHC) will provide sampling and testing of 60 baitfish per lot. For virology, kidney and spleen samples will be combined into 5-baitfish pooled samples for a total of 12 samples; 30 individual baitfish will be tested for bacteriology and 20 baitfish will be externally and internally examined for parasites. Testing will focus on detecting the presence or absence of a targeted list of pathogens of concern (listed below).

LFHC will screen and confirm pathogens using procedures listed in the Laboratory Procedures Manual for the National Wild Fish Health Survey (3.1 ed., March 2006, available online at http://www.fws.gov/wildfishsurvey) and/or the AFS-FHS (American Fisheries Society-Fish Health Section), FHS blue book: suggested procedures for the detection and identification of certain finfish and shellfish pathogens (2007 edition or most recent. AFS-FHS, Bethesda, Maryland). LFHC will also perform confirmatory or other specialized tests needed to substantiate or refute laboratory results, such as Polymerase Chain Reaction (PCR) assays. Fish health laboratory results reports will be provided upon completion of testing for each facility.

### Pathogens of concern in baitfish

**Viruses**
IPN (Infectious Pancreatic Necrosis Virus)
IHN (Infectious Hematopoetic Necrosis Virus)
VHS (Viral Hemorrhagic Septicemia Virus)
OMV (Oncorhynchus masou Virus)
LMBV (Largemouth Bass Virus)
SVCV (Spring Viremia of Carp Virus)
Fathead Minnow Virus
Grass Carp Reovirus (syn. Golden Shiner Virus)
Unknown viruses (or replicating agents)

**Bacteria**
*Aeromonas salmonicida*
*Yersinia ruckeri*
*Renibacterium salmoninarum*
*Edwardsiella ictaluri*

**Parasites**
*Glugea* sp.
*Heterosporis* sp.
*Pleistophora ovariae*
*Myxobolus* sp.
*Dactylogyrus* sp.
*Gyrodactylus hoffmani*
*Bolbophorus confusus*
*Diplostomum spathaceum*
*Bothriocephalus acheilognathi* - Asian Tapeworm
*Ligula intestinalis*
*Ergasilus* sp.
*Lernaea* sp.

**Facility inspections:**

The company would be subject to up to 2 facility inspections per year. The facility inspections include the examination and testing of baitfish held at the time of the inspection by the company either in ponds or other artificial storage locations not including vehicles that are about to deliver baitfish to customers. For the purposes of this health assessment work a lot will be defined as baitfish of the same species that share a common water source. If the company uses vehicles to store baitfish as a part of their business, then the baitfish in those vehicles at the facility at the time of the inspection may be subject to testing as part of the facility inspection. The businesses will not be required to be closed during the inspections.

The cost of the inspections would be $1,500 per lot of baitfish. For each inspection there is also a $300 travel expense added to the total cost of the baitfish lots examined. A lot of baitfish is defined as 60 baitfish of each species, and if the baitfish are from different locations then they would be considered different lots. For example, if one pond at the facility had fathead minnows from Minnesota and another pond had fathead minnows from Arkansas then they would be considered to be two separate lots of baitfish and each would be tested. In another scenario two ponds could contain fathead minnows that were obtained from the same source. In this case 30 baitfish would be sampled from each pond and the total 60 baitfish sample would be considered one lot. The total cost of the inspection will depend upon how many species of baitfish are present at the time of inspection and how many different sources the baitfish came from, but in no event will the total cost of the facility inspection exceed $5,000 during a calendar year.

The inspections will be during normal business hours Monday through Friday between the hours of 8 AM and 5 PM. The inspections will be random and unannounced. If the facility is closed or otherwise unstaffed at the time of the inspection, the inspectors will return at another random unannounced time. The baitfish will be examined for the pathogens of concern listed in the survey document. If any other viruses, bacteria, or parasites are found they will also be reported to DATCP and the WDNR.

**Monthly inspections:**

The monthly inspections will consist of no more than three lot inspections per month. A lot is defined as a 60 baitfish sample of an individual species being imported from a specific company during the month. For example, if the company is importing fathead minnows and sucker minnows from a Minnesota company, we may require that a 60 baitfish sample of fathead minnows be submitted for examination from the shipment. This would be one lot of baitfish at a cost of $1,500 per lot of baitfish plus the cost of shipment to the USFWS Baitfish Health Center in Onalaska, WI. Both parties agree to work in good faith to insure the best sampling and shipment method is used under specific directions and procedure of USFW.

Up to three lots are subject to examination in any given month for a maximum of 36 lots tested per year. There is no requirement for every lot of baitfish tested for DATCP

VHA requirements to be submitted for probationary compliance testing. The suggestion of having the veterinarian who is doing the DATCP VHA testing to also take a 60 baitfish sample for compliance testing was offered as advise to simplify the collection if a particular lot of baitfish is requested for compliance testing.

Companies will be required to notify the USFWS and the WDNR of all imports by the 25th day of the preceding month of the imports. In addition, the defendant must submit monthly reports to the USFWS and the WDNR on their imports/exports and any other interstate transportation of baitfish to include species, quantity, price, and recipient by the 10th of each month following the month of the interstate transportation.

In the event a lot selected for testing by USFWS or WDNR under this plea agreement is also the same lot in which a sample must be taken by a veterinarian or other authorized person to comply with the Veterinary Health Authorization (VHA) required by DATCP for the issuance of an import permit, the veterinarian or other authorized person will take an additional 60 baitfish sample of each species and forward this sample, on ice, via overnight mail to the USFWS Fish Health Center in Onalaska, WI, for laboratory testing. Once a completed VHA for the shipment is received by DATCP, DATCP may issue an import permit according to established policy. DATCP is in not required to wait for the results of the USFWS testing to issue an import permit.

Copies of the completed test results will be provided to company, DATCP and the WDNR.

## GOLLON BROTHERS WHOLESALE LIVE BAIT, INC.

### UNANIMOUS WRITTEN CONSENT ACTION
### OF THE SHAREHOLDERS

The undersigned, being holders of 100% of the issued and outstanding share of common stock of Gollon Brothers Wholesale Live Bait, Inc., a Wisconsin corporation (the Corporation), do hereby unanimously consent to, adopt and approve the following resolutions, with the same force and effect as if such resolutions were duly adopted by the unanimous affirmative vote of the shareholder of the Corporation taken at a special meeting thereof duly called and held on the 27 day of August, 2009 (Effective Date):

**WHEREAS**, the Corporation has been under investigation by the United States Fish and Wildlife Service, Wisconsin Department of Natural Resources and the United States Attorney's Office for the Western District of Wisconsin (Investigation) relating to allegations that the Corporation transported or possessed baitfish which had traveled in interstate commerce in violation of state and federal law;

**WHEREAS**, the United States Attorney has provided the Corporation with a Plea Agreement and an Information, which have been reviewed by the shareholders of the Corporation, reciting the above offense and the facts relating thereto, pursuant to which the Corporation would enter a plea of guilty to the offense charge contained in the Information. Copies of the Information, Plea Agreement and Survey Document are attached as exhibits A, B and C.

**WHEREAS**, the Corporation is represented by Hurley, Burish & Stanton, S.C., to represent it in the Investigation;

**WHEREAS**, the shareholders of the Corporation have considered the time and expense that would be required of the Corporation to defend itself at a trial brought by the United States of America with respect to the Investigation, and various factors relating thereto and, after consultation with counsel, has decided that it is in the best interest of the Corporation to execute the Plea Agreement and thereby plead guilty to the charge contained in the Plea Agreement;

-1-

**WHEREAS**, the Corporation understands that the Plea Agreement requires it to enter a plea of guilty to a violation of 16 U.S.C. § 3372(a)(2)(A). The maximum potential fine for a violation of this section, pursuant to 18 U.S.C. § 3571, shall be the greatest of $500,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense;

**WHEREAS**, the Corporation understands that pursuant to the Plea Agreement, the court may require it to pay a fine, place it on probation or both;

**WHEREAS**, the Corporation further understands that it will be required to pay a special assessment of $400 at or before the time of sentencing;

**WHEREAS**, the Corporation further understands that, if the court accepts the Corporation's guilty plea, the Corporation will be adjudicated guilty and the Corporation may be placed on probation for a term of not less than 12 months and not more than 60 months;

**WHEREAS**, the Corporation has been advised by its counsel of certain rights which are surrendered by a guilty plea, and recognizes that these rights include, among others, the following:

    A.    The right to indictment by a grand jury. The grand jury, composed of citizens residing in the judicial district, would have to find that probable cause existed to believe that the corporation engaged in a violation of federal criminal law.

    B.    If the Corporation persisted in a plea of not guilty to the charge against it, the Corporation would be entitled to a speedy and public trial by a court or jury. The Corporation has a right to a jury trial. However, in order for that trial to be conducted by the judge sitting without a jury, the Corporation, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    C.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The Corporation and its attorneys would have a say in who the jurors would be by removing

-2-

    prospective jurors for a cause where actual bias or other disqualifications are shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the Corporation is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

  D. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not she was persuaded of Corporation's guilt beyond a reasonable doubt.

  E. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the Corporation. The Corporation would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and the Corporation's counsel would have the right to cross-examine those witnesses. In turn, the Corporation could, but is not obligated to, present witnesses and other evidence on its own behalf. The Corporation would be entitled to compulsory process to call witnesses.

 **WHEREAS**, the Corporation after consultation with counsel wishes to waive in open court these aforementioned rights;

 **WHEREAS**, the Corporation has been advised by its lawyers of the elements of the offense which the United States must prove beyond a reasonable doubt at trial, namely that the Corporation knowingly:

  A. engaged in conduct that involved the sale or purchase of baitfish;

  B. transported the baitfish in interstate commerce;

  C. received, acquired or purchased baitfish in violation of Wisconsin law, specifically, WIS. ADMIN. CODE ATCP §

        10.62(2)(1)(a)4, which requires a valid written import permit and health certificate; and

    D.    The market value of the baitfish exceeded $350.

**WHEREAS**, the Corporation understands that it will be found guilty of the offense charged in the Information upon its guilty plea;

**WHEREAS**, the Corporation understands that the presiding judge will order that a presentence report be completed and that information collected by the U.S. Pretrial Services will be provided to the Court and may be used in determining the appropriate sentence in this matter;

**WHEREAS**, the shareholders of the Corporation have full legal authority to make all legal decisions regarding the Plea Agreement and resolution of the criminal charge set forth therein.

**NOW THEREFORE IT IS HEREBY:**

**RESOLVED**, that the Corporation waives its rights to:

    A.    Indictment by a grand jury.

    B.    A speedy and public trial by either a court or jury.

    C.    A jury composed of twelve citizens selected at random.

    D.    Requiring the government to establish guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    E.    A unanimous jury verdict with respect to each element of each offense charged.

    F.    The right to confront witnesses upon whose testimony the government is relying to obtain a conviction and the right to cross-examine those witnesses.

      G.    The right to present witnesses and other evidence on its own behalf.

      H.    The right to compulsory process to call witnesses.

**FURTHER RESOLVED**, that the Corporation stipulates that the elements of the offense charged could be proven beyond a reasonable doubt;

**FURTHER RESOLVED**, that the Corporation authorizes its lawyers or shareholders to enter a plea of guilty to the offense set forth in the Plea Agreement;

**FURTHER RESOLVED**, that the Corporation stipulates that a sufficient factual basis exists for its guilty plea and that such a factual basis is contained in the Plea Agreement and Information;

**FURTHER RESOLVED**, that the Corporation will pay a fine as ordered by the Court;

**FURTHER RESOLVED**, that the Corporation will pay restitution, if any, as ordered by the Court;

**FURTHER RESOLVED**, that the Corporation will pay the special assessment at or before the time of the sentencing in this matter;

**FURTHER RESOLVED**, that the Shareholders (Authorized Officers) are authorized, for and on behalf and in the name of the Corporation, to execute and deliver the Plea Agreement, together with such changes thereto as the Authorized Officers or any of them may upon advice of counsel determine to be necessary, advisable or appropriate, provided that such changes taken as a whole are favorable to the corporation;

**FURTHER RESOLVED**, that the Authorized Officers, or any of them, is/are authorized, for and on behalf and in the name of the Corporation, to take and perform such lawful actions as he or they shall determine to be necessary, advisable or appropriate in the connection with the Plea Agreement, in order to accomplish the purposes of the foregoing resolutions and to fully perform the obligations of the Corporation contained in the Plea Agreement;

**FURTHER RESOLVED**, that the Corporation authorizes its lawyers and/or its Authorized Officers to act on the Corporation's behalf, to enter pleas on its behalf and to make all decisions and actions on its behalf pertaining to the resolution of all possible outstanding criminal charges which have been brought by the Untied States;

**FURTHER RESOLVED**, that the Corporation directs and authorizes its lawyers and/or Authorized Officers to undertake all actions on the Corporation's behalf that are required by the Plea Agreement reached with the United States, including, but not limited to, signing the Plea Agreement and entering a guilty plea on its behalf; and

**FURTHER RESOLVED**, that this unanimous Written Consent Action may be executed in counterparts.

**IN WITNESS WHEREOF**, the undersigned have executed this Unanimous Written Consent Action as of the Effective Date.

_____
Benjamin Gollon
Title: Shareholder

_____
Joseph Gollon
Title: Shareholder

f:\-clients\gollon brothers\Unanimous Written Consent.wpd